WASHINGTON NEWMAN *v.* VICKSBURG AND MERIDIAN RAIL-ROAD COMPANY.

1. RAILROAD COMPANY. *Negligence. Killing animal.*
  A railroad company is liable in damages if a horse driven through fright from its running train upon a trestle, jumps over, and is killed, provided the casualty could have been prevented by the exercise of due care on the part of the company's employees.

2. SAME. *Killing animal. Duty of employees.*
  And in such case it is the duty of the company's employees to act with reference to the known habits of such animal in avoiding danger.

3. SAME. *Duty as to frightened horse. Case in judgment.*
  Where an engineer running a railroad train sees a frightened horse running before his train on the railroad track toward a trestle, it is his duty to stop the train to avoid injury to the animal as well from self infliction as from actual collision.

4. PRACTICE. *Instruction not applicable to evidence.*
  It is proper for a court to refuse an instruction otherwise correct, when there is nothing in the evidence to warrant the jury in finding the facts assumed in such instruction.

APPEAL from the Circuit Court of Hinds County.

HON. T. J. WHARTON, Judge.

In September, 1884, Washington Newman brought this action against the Vicksburg and Meridian Railroad Company before a justice of the peace to recover the value of a certain horse alleged to have been killed by the negligence of defendant in running its train.

On the trial of the cause in the circuit court, on appeal, the plaintiff introduced evidence which tended to show that on the night of August 4, 1884, plaintiff's horse was walking on defendant's railroad track at or near a certain bridge or trestle in the city of Jackson; that the track at that point was laid on an embankment of steep descent on either side; that a passenger train run-

ning further than usual and faster than six miles per hour approached from the west; that the horse ran down the track before the train until he reached the bridge, when he was taken up by the cow catcher of the engine and borne two-thirds the way across the bridge; that the train then stopped and backed off from the bridge, and the employees of the train went forward and threw the horse overboard, where he was found the next morning; that no whistle or alarm bell was sounded, and that the horse could have been seen in time to have stopped the train with the appliances in use.

The defendants introduced evidence which tended to show that the engineer saw the horse walking on the track, and immediately put on brakes; that the train came to a full stop just before reaching the bridge; that the horse in his fright had attempted to run across the bridge, instead of going down the bank, as he might have done; that he got caught in the bridge as he was about two-thirds across; that the employees of the train, when it stopped, went to the horse and endeavored to get him across and out of the way, but in their efforts to do so he jumped over and killed himself.

The following instructions were given for the plaintiff:

"1. If the jury believe from the evidence that the train of defendant just prior to the killing of plaintiff's horse was running within the corporate limits of the city of Jackson at a greater rate of speed than six miles an hour, then the defendant is liable on this ground for all injuries inflicted by said train, even though at the moment of inflicting the injury the rate of speed was less than six miles an hour, if the injury resulted from the inability to stop the train in time to prevent the injury because of such excess of speed over six miles an hour."

"2. If the jury believe from the evidence that the horse of the plaintiff was within a few feet of the defendant's track dead, and that the injury was inflicted by the running of defendant's cars, then the presumption is that such injury was from the want of reasonable skill and care on the part of the servants of the company, and the plaintiff should recover unless the defendant by a preponderance of the evidence shows that it exercised reasonable skill and care in running said cars."

"3. If the jury believe from the evidence that the engineer of defendant's train saw plaintiff's horse on the track, with a high embankment on either side, dangerous of descent by the horse (if they believe from the evidence it was so dangerous), and with a bridge before him without flooring, then, if by reasonable diligence the engineer could have stopped the train, it was his duty to do so, and if the injury resulted from the horse running on the bridge from fright of and fright from the approaching train engine after the engine could by reasonable diligence have been stopped, then defendant is liable on this ground for the value of the horse, with interest at six per cent. per annum from the date of the killing until this date."

The following instructions were asked by the defendant and refused:

"4. If the jury believe from the evidence that the plaintiff's horse was not struck by defendant's locomotive, but that it attempted to cross the bridge over Town Creek and in making the attempt put its foot between the cross-ties and thus became entangled so as to be unable to extricate itself, and that the defendant's servants relieved it, and attempted to remove it, and that the animal became alarmed and jumped over the bridge and killed itself, the defendant company is not liable and the jury will find for it and against the plaintiff."

"5. If the jury believe from the evidence that the plaintiff's horse attempted to cross the bridge over Town Creek and thus became entangled, and that its death resulted therefrom and because of the jump of the animal from the bridge, they will find for the defendant."

"6. It is the duty of the employees of a railroad company engaged in the operation of a train to clear the track of any obstruction upon the track and which they can with the means at hand, remove, and in their efforts to remove such obstruction, when a living animal, to use the means which a man of ordinary intelligence would employ in like case; and if the jury believe from the evidence that the plaintiff's horse, in attempting to cross the bridge, became entangled between the cross-ties, and that defendant's

servants went to him and extricated the animal's legs, and with a rope around his neck undertook to pull him off, but that the animal pulled back, broke the rope, and jumped from the bridge, the jury will find for the defendant."

During the course of his argument the counsel opening the case for the plaintiff made the following statements :

" In considering the probable truth of the testimony of witnesses on both sides, and in view of the fact that the testimony of Charles Carter has not been broken down, I say it is proper and right that you should consider the parties to this suit themselves.

" I say that parties with armies of retainers like these railroad corporations have grown to such a position that they seem to have been constructed in order that a few might live and fatten on the arterial blood of the country.

" I have the right to call your attention to such facts that you may not stand in awe of such parties as these.

" This poor negro has the same right to have his matters adjudicated as the defendant, but things have come to such a pass in this country that a railroad company is very much injured if an humble man dares to bring them into the courts. If he dares to appeal to the juries of the country, it is high treason.

" I say you must consider who the parties are, and who is more likely to overawe witnesses—a corporation of this sort, or a private individual.

" I put it to your own knowledge of human nature, whether it is not true that immense corporations, controlling immense armies of operatives, are not more likely to overawe witnesses than Wash. Newman.

" Is it not a fact .that it has never happened in the history of jurisprudence that a railroad employee, however good a man he may be, has ever testified that he did anything to the damage of the.company in litigation ? It never has happened and never will till the latest syllable of recorded time.

" This dignified defendant, against whom it is treason to bring suit, can build a trestle and put the ties just so far apart as to tempt an animal to go on it, and break his legs when he goes on it.

" I say that with the Westinghouse air-brake in proper condition, an engineer can stop a train going twenty miles an hour within one hundred feet.

" If that horse had belonged to that engineer he would have been alive to-day. There is no doubt of that in my mind and I do not believe there is in yours, and the engineer is held to the same care in protecting the stock of others as a reasonably prudent man would exercise to prevent killing his own stock under like circumstances.

" I know that old negro man Carter told the truth, and you know it." To all of which remarks the defendant excepted. Thereupon the judge responded to the objections by telling the jury that they were to pay no attention to any statement of counsel that was not founded upon the evidence before them. The jury found for the plaintiff, and from the judgment in his favor the defendant appealed.

*W. L. Nugent,* for the appellant.

1. The first charge does not announce a correct rule of law as applicable to the case. The case of the *Railroad Company* v. *Toulme,* 59 Miss. 288, announces the view of the supreme court to be that a railway company is liable "for all damage resulting from such excess of speed (over six miles an hour in an incorporated town), whether it be done while such speed is maintained, *or by reason of it having been maintained it has become impossible to check the train in time to avoid accidents.*" In that case the speed of the train, at the time the animals were seen, was over six miles an hour, and the inability to check the train was directly the result of this violation of the law.

2. The second instruction should not have been given. The rule announced by the statute could have no application whatever. The plaintiff undertook to prove exactly how the accident occurred, and the defendant had developed all the facts in the case. The question, therefore, was not one to be determined by presumption, but upon the whole evidence. If that disclosed a case of negligence the company was liable, otherwise not.

3. The third charge is clearly erroneous, and as the verdict

could only be justified by the idea suggested by it, we give it special notice. There was not a particle of evidence tending to show that the embankment of the railroad on either side was dangerous of descent by the horse. It is true the parenthetical clause (if they believe from the evidence it was so dangerous) is thrust into the charge to cover the manifest purpose suggested, but the vice remains.

If the horse from fright at the approaching train went upon the bridge and was killed the company is not liable. *Peru & Ind. R. R. Co.* v. *Hasket*, 10 Ind. 408; *Lafferty* v. *H. & St. Jos. R. R. Co.*, 44 Mo. 291.

The proposition contained in the charge is denied in the case of *Holder* v. *Chicago & R. R. Co.*, 13 Am. & Eng. R. R. Cases. In this case the lower court had charged the jury as follows: "If you find that the defendant's train was stopped before it overtook or reached the plaintiff's mule colt, and that the mule was frightened at the time, and ran along the defendant's road, and jumped off and killed himself, then the defendant would not be liable even if all the statutory precautions were not complied with by the company." The facts were that the mule jumped on the track in front of a moving train, ran on the road for two hundred yards, and then on a trestle, from which it leaped and was killed, the train being stopped before it reached the trestle. The charge was approved and the railroad company had judgment. *Seibert* v. *Messina & R. R. Co.*, 72 Mo. 565; *Barton* v. *R. R. Co.*, 4 Harr. 252; *R. R. Co.* v. *Thomas*, 60 Ind. 109.

4. The court grievously erred in refusing the fourth, fifth, and sixth instructions asked by the defendant below. They ought all to have been given so as to give us the benefit of our evidence before the jury. They were refused and the issue was almost forced for the plaintiff.

The issue presented was a straight-out claim for the value of a horse that had been carelessly and negligently run down and killed by defendant's locomotive. The latter clause of the statement could hardly be interpreted as meaning anything else. The failure to stop the train, whereby the horse was run down and killed by

the locomotive, is the case here and was the case below. The defense was that the horse had not been run down and killed by the locomotive at all, but had gone on the bridge, became entangled in the cross-ties, and, in the effort by the train men to release him, became restive and leaped from the bridge, causing his own destruction. That defense we had the right to put to the jury under the charges asked and refused. *Holder* v. *R. R. Co.,* 13 Am. & Eng. R. R. Cases 567; *R. R. Co.* v. *Weathersby,* 63 Miss. 581.

5. The argument of counsel in the opening of his case, and his declaration of facts not in evidence, and his declamation against railroad corporations carried the day. We ask for a new trial on this point.

A like question arose in the case of *East Tennessee Railroad Co.* v. *Bayliss,* 22 Am. & Eng. R. R. Cases 596, and the true rule on the subject is thus stated : " When counsel trespasses on the domain of unproven facts, the presiding judge should promptly set aside any verdict they may recover, unless he is clearly and affirmatively convinced the verdict is right, and would have been the same in the absence of any such unauthorized statement. The law, by imposing on railroads the duty and burden of disproving all acts of negligence when they are shown to have inflicted an injury, is certainly exacting enough without loading them down with additional burdens which are neither proved nor provable. Corporations, under the same measure of proof, are entitled to the same verdict and judgment that individuals are entitled to. Less than this is not a verdict according to the evidence." *Cleveland Paper Co.* v. *Banks,* 48 Am. Rep. 334; *Coble* v. *Coble,* 28 Ind. 338; *Brown* v. *Swareford,* 28 Ind. 582; *Perry* v. *State,* 10 Ga. 522; *Tucker* v. *Hunnecker,* 41 N. H. 317; *Martin* v. *State,* 63 Miss.; *Thompson* v. *State,* 43 Texas 268.

*Calhoon & Green,* for the appellee.

1. The first instruction given for plaintiff is clearly the law. *N. O., M. & T. R. R. Co.* v. *Toulme,* 59 Miss. 284.

2. The second instruction for plaintiff is free from objection. Suppose there were witnesses to the actual facts, and they testify crosswise, leaving the jury in doubt, it is surely proper to let them know on whom the law puts the burden.

3. The third instruction given for plaintiff is all right. In the first place, we differ from counsel, and say there *was* evidence warranting the jury in believing that the embankment was steep and dangerous of descent to a horse at night. Granted this, then we say that under such circumstances, an engineer is culpably negligent who drives ahead, forcing upon the horse an election of the descent or the unfloored bridge, and it was his duty to stop before running on the horse or running the horse on the bridge. If this is not the law then that was a doomed horse. If he stood still the engine would kill him, there being no obligation on the engineer to stop. If he ran off on either side the dangerous embankment there was death, and if he ran on the bridge there was death. If the law so dooms an animal it should have execution legally done by a sheriff, and so withdraw that gratification from railroad engineers. *I. C. R. R. Co.* v. *Walker*, 63 Miss. 13; *M. & O. R. R. Co.* v. *Holt*, 62 Miss. 170; *Tyler* v. *I. C. R. R. Co.*, 61 Miss. 488; *R. R.* v. *Ethridge*, MS.

4. There was no error in refusing the fourth, fifth, and sixth instructions asked for by defendant. They were outside of the case and calculated only to mislead. The question being tried was negligence or no negligence, and these instructions have no relevancy to that question.

5. We really think it useless to discuss the points made on our opening argument below. The connection in which the words were spoken does not fully appear. The speech was answered by able counsel. If there was anything objectionable in the language the court fully admonished the jury about it when defendant objected. Besides, this is not a criminal case, and, finally, there is nothing objectionable in the language.

COOPER, C. J., delivered the opinion of the court.

The instructions given by the court properly instructed the jury that if by negligence of the defendant's employees the horse of the plaintiff was run down by the train, or driven upon the bridge and thereby injured, when by the exercise of proper care this might have been avoided, the plaintiff was entitled to a verdict.

The instructions asked by the defendant and refused by the court were properly refused. It may be true that the horse went upon the bridge as therein stated and was killed by falling therefrom, but if he went upon the bridge to escape the approaching train negligently driven toward him by the servants of the company, it was responsible for the injury which resulted. Neither of the refused instructions contained an announcement of this proposition, but the jury was informed by them that if the horse went upon the bridge and was not struck by the engine the law was for the defendant. There is nothing in the evidence which would have warranted the jury in finding that the horse of his own volition strayed on the bridge, and only under such circumstances could the instructions as asked be correct. It is true that a railroad company is not ordinarily liable for injury resulting from fright occasioned by the running of its trains, but when its servants are informed of the dangerous situation of an animal they must act with reference to its known habits in avoiding injury. If, as in this case, the animal is perceived by the servants on the embankment of the road, with a bridge in front, common prudence requires that the train be stopped, both to prevent injury by actual collision and to avoid self-inflicted injury resulting from the efforts of the animal to escape.

The argument and remarks of counsel, to which exception was taken, do not require a reversal of the judgment.      *Affirmed.*