HENDERSON & MATHIS *v.* HINES, DIRECTOR OF RAILROADS.

[83 South. 589, In Banc.   No. 20929.]

1. RAILROADS. *Engineer required to keep lookout for stock on un-
fenced track in pasture.*
   An engineer, operating a locomotive on an uninclosed track through
   an inclosed pasture, is required to keep a lookout for stock while
   not engaged in other duties, and not merely to exercise reason-
   able care after discovery of the stock on the track in a place of
   danger, since the stock in such case are not trespassers on the
   track.

2. APPEAL AND ERROR. *Erroneous instruction on damages harmless
   where verdict for defendant.*
   In an action against a railroad for the death of a mule an in-
   struction on comparative negligence was harmless where the
   verdict was for the defendant.

3. NEGLIGENCE. *Comparative negligence inapplicable to injury to
   animal by railroads.*
   The comparative negligence statute has no application to injury of
   personal property.

APPEAL from the circuit court of Lincoln county.

HON. D. M. MILLER, Judge.

Suit by Henderson & Mathis against W. D. Hines, Director General of Railroads. From a verdict for defendants, plaintiffs appeal.

The facts are fully stated in the opinion of the court.

*P. Z. Jones,* for appellant.

The first instruction set out on page 6 for the defendant is erroneous because not in accordance with the evidence and because it is not the law that the engineer is required to keep no lookout for stock; it is the duty under the law for the engineer to keep a lookout for stock or any other obstruction on the track in front of his train. This is his duty for two reasons, first for the safety of his train, and second, to prevent accident to live stock that may be on the track, and in a pasture through which an unenclosed railroad track runs he is required to keep a lookout for stock grazing in the pasture for he is bound to know as a matter of common knowledge that stock are likely to go on the railroad track.

This is the rule as we gather it from the decisions of our court and others. The only exception is where, for the time being, the engineer may be engrossed with some work about his engine requiring his attention in the safe operation of the train. His first duty is of course to run his train and run it safely, and his second duty is to keep a lookout for a clear track. The second is almost inseparable from the first. How can an engineer run his train if the track is not clear and safe and how can he know that the way is open and clear unless he keeps a lookout? *Scott* v. *R. R. Co.*, 72 Miss. 37; *Dickerson* v. *R. R. Co.*, 110 Miss. 898, 46 Miss 573; *R. R. Co.* v. *Patton*, 31 Miss. 156; *R. R. Co.* v. *Miller*, 40 Miss. 45; *R. R. Co.* v.

*McNeil,* 61 Miss., 434, 59 Miss. 465; *R. R. Co.* v. *Cantrell,* 69 Miss. 435; *Cantrell* v. *R. R. Co.,* 24 So. 871, 64 Miss. 115; *R. R. Co.* v. *Morrison,* 107 Miss. 300; *R. R. Co.* v. *Kea,* 66 So. 735; *R. R. Co.* v. *Frasier,* 104 Miss. 372; *R. R. Co.* v. *Calhoun,* 68 So. 443; *R. R. Co.* v. *Jones,* 111 Miss. 159; Notes, 24, L. R. A. (N. S.) 858; *Howard* v. *R. R. Co.,* 67 Miss. 247, 11 L. R. A. 460; 1 Rapalje & Mack's Digest Railway Law, par. 62, page 118.

This instruction gives the jury the idea that it was immaterial that a drove of mules was on the track, either on the side or in front of the train. That the engineer was unconcerned about this and owed no duty to the plaintiffs or others to look out for the mules and that he was under no obligation to do anything to avoid striking the mules. In other words he can run right into a drove of mules and kill, maim, injure and destroy without accountability to any one.

In the case of *Jones* v. *R. R. Company,* or *vice versa,* 111 Miss. 159, at page 160, Judge Cook makes use of this sentence: "There is no obligation on the servants of the company to keep a lookout for trespassing stock."

This is the only expression in any of the cases we find that justifies the instruction given in this case. In that case the injury occurred while the train was being run in the country, not in a pasture, and the stock are designated as trespassing stock. This of itself is sufficient to differentiate the two cases, for here the stock were in a pasture and the railroad company was charged with knowledge of the fact that stock would go on the track, that is stock pasturing in the enclosure. *Vicksburg & Jackson R. R. Co.* v. *Patton,* 31 Miss. 156. We do not think that the expression of Judge Cook correctly states the law, and besides in that case it was *obiter dictum,* as the testimony in that case was that the engineer was looking ahead.

See statement of the facts. He testified that he was running his train about fifty miles an hour in the country, and that he was in his proper place on the engine, keeping a lookout ahead, and that his headlight revealed the mules on the track about four hundred or five hundred feet ahead of the train, etc. He further testified that he shut off steam, blew the stock alarm and applied the emergency brakes. With the engineer doing all of this and keeping a direct lookout ahead there was no use of the expression because the issue as to whether it was or was not his duty to keep such a lookout was not presented for discussion by the lawyers in the case or decision by the court.

So also in the present case, the instruction was lugged into the case unnecessarily because the engineer testified that he was keeping a lookout. All the circumstances as testified to by the witness for the plaintiff would indicate that he was not, but the jury could very readily infer from this instruction that it was unnecessary for them to decide this point because the court had told them by this instruction that he did not have to keep a lookout ahead.

The duty of the engineer to keep a lookout is stated in the following language by this court through Judge CAMPBELL in the case of *Howard* v. *Railway Company*, 67 Miss., at page 249: While a lookout should be kept when running, it is not want of proper care for the servants of the company to give needed attention to their primary duty which is the operation of the engine.

There was no evidence in this case that the engineer was engaged in some duty about the operation of his engine which took his attention away from the track in front of his engine. In fact he said that he was looking ahead. The instruction was in direct conflict with both the evidence and the law as announced above in the case cited.

In the case of *Railroad Company* v. *Morrison,* 107 Miss. 300 to 304, the engineer testified that the train was properly equipped with all necessary appliances for safe use, and that it was under control, and that he was on the lookout.

In the case of *Railroad Company* v. *Frazier,* 104 Miss., at page 377, it is shown that the engineer was in his proper place on the engine, and. on the lookout.

In the case of *Harris* v. *Railway Co.,* (Okla.), 103 Pac. 758, 24 L. R. A. (N. S. 858, the rule is stated as follows: It is not enough for the engineer and fireman in charge of a railway locomotive and train to use diligence merely in driving animals away that are discovered upon the track; they should keep a vigilant lookout and exercise ordinary diligence to frighten away animals that may be discovered approaching, etc.

In the notes to this case where many authorities are collected and considered the rule is stated to be: "By the great weight of authority it is held to be the duty of those in charge of locomotives to keep a lookout for live stock on or near the track in order that they may prevent injury thereto, the care required in doing so being a reasonable and ordinary care."

In 11 L. R. A., page 460, the notes state that "It is the duty of the employees of a railroad company to keep a lookout for stock on the track." The instruction given in this case tells the jury that it is not their duty to keep a lookout.

The evidence in this case shows that the place where the mule was struck was straight with nothing to obstruct the vision and nothing to divert the attention of the engineer. There is no testimony that at the time he was engaged about any work on his engine.

Instructions two and three single out a portion of the evidence and draw the attention of the jury to one

portion of the testimony, and lead the jury to believe that it was the mule said by the fireman and engineer that ran across the track in front of the engine and going north of northwest that was hit, and thus the testimony of the plaintiffs and their witness to the effect that there was a drove or bunch of mules on the track and on either side of the track for a distance of one hundred and fifty to two hundred feet or more and that the injured mule was found on the south side of the track and trailed from the track to where he was found by the blood and the tracks of the mule was completely ignored.

Of course if the engineer and fireman were on the lookout and never saw any mule or mules, or if they were temporarily engaged about some part of their work that diverted their attention from the track in front of the train, and never saw the mule until just as it ran in front of the train and too late to avoid the accident, the defendant is not liable. But the court told the jury that they were not required to be on the lookout and that if the mule which the fireman saw or said he saw ran in front of the train so near that they could not prevent the train from striking it then the defendant was not liable.

The employees of the defendant were required by law to be on the lookout unless their time and attention was absorbed in their work or some part of their work requiring attention elsewhere, and as the evidence does not show that the engineer was engaged in other work and as he testified that he was on the lookout, on his engine seat looking ahead, the jury should have been left free to say whether he saw or by reasonable care should have seen the bunch of mules on track and on the sides of the track and left to consider whether it was one of this bunch which he could have seen, instead of being limited to the one crossing to the north just in front of

the train.  The testimony was that these mules ran down the track and from this testimony it is to be inferred that one of these mules was killed, but the defendant's instructions draw particular attention to the one mule that was crossing in front of the train and told the jury that if this mule was not killed then their verdict should be for the defendant.  We submit that this is the fair and reasonable construction to be placed on the defendant's instructions.

The fourth instruction was bad for two reasons, first, it starts out with the premise indicating that the plaintiffs had no right to recover if they put their mules in a pasture knowing that the defendant's railroad tracks ran through the pasture unenclosed; and second, with the idea that the defendant's employees owed no duty to the plaintiffs until after their mules were discovered in a place of danger, and if after they were so discovered the said employees then exercised reasonable care to avoid the injury, the defendant is not liable.  The fifth instruction also embodies the last idea and is bad for that reason.

In the first place the plaintiffs had as much right to use the pasture for their mules as the defendant did for his train or trains.  The plaintiffs and the plaintiff's mules were no more trespassers for using the pasture than the railroad company is in using it for the running and operating of their trains.  See *Railroad Company* v. *Patton*, 31 Miss. 156..  The instruction carries with it clearly the idea that the plaintiffs were in fault for pasturing their mules in a pasture where there ran an unenclosed railroad track and it carries with it the further idea especially when coupled with the first instruction that the engineer was under no duty to keep a lookout and that he owed no duty to the plaintiffs relative to the safety of his mules except to refrain from the infliction of wilful and wanton injury after they were seen and discovered on the track.

The very reverse of this rule as announced by this instruction is the law as we understand it. The plaintiffs were on an equal footing in this pasture with the railroad company; the railroad company as a matter of law had notice and knowledge of the uses to which the pasture was put; that live stock in a pasture traversed by an unenclosed railroad track would, in the nature of things and by the very nature of the live stock and their disposition to go wherever grazing was to be had, probably go on the railroad track. Being chargeable with this common knowledge in the very essence of things, the engineer should have kept and maintained a lookout for stock in this pasture and have run his train with all these things in mind. His duty did not begin after the stock were discovered in a position of peril on the track.

The condition of these mules or other live stock in the pasture is equivalent to and more nearly like that of a railroad employee engaged at work on the railroad track. The engineer may not run his train over and against a section hand and say that he did not keep a lookout and was under no duty to keep such a lookout and that he owed no duty to the section hand until after he saw him in a place of danger. He is bound to run his train with proper regard for bridge gangs and crews and other employees whose duties require them to be on and about the track.

A mule or drove of mules in a pasture has the disposition to go on and be about eating grass either on or off the railroad track and any man is chargeable with this common knowledge. It might just as well be said that the railroad company should fence its track as to say that a man may not use his pasture unless he will separate it from the railroad by a fence.

In other words the duty rests as much on the railroad company to fence its track as it does on the owner or user of the pasture to fence his pasture off

from the railroad. There is no duty on either to do so. Both are landowners and both have the right to use their property. If an accident occurs neither is to be charged with negligence or fault because he was using his property under such conditions.

It was just as lawful for the plaintiffs to use the pasture as it was for the railroad to use its track, and the defendant is liable for the injury to the plaintiff's mules if the injury can be traced to and shown to be caused by the defendant's negligence, and it was and is negligence and the defendant is guilty of negligence if its employees did not keep a lookout for the mules and do what they could to avoid the injury.

We submit that if we are mistaken as to the palpable mistake of the jury in returning a verdict for the defendant, then the testimony of the plaintiffs and the defendant can at least be regarded as close, and in a close case with the erroneous instructions given for the defendant that were given in this case the plaintiffs did not and could not get a fair show and they did not have an equal opportunity before the jury. Why, the judge was so far from his poise, and the counsel for the defendant were so overwrought, that the rule of comparative negligence was invoked and applied to the mule. We submit that the mule was not given a fair chance by the railroad employees for his life and that his owners did not get their claim for compensation fairly presented to the jury and that a new trial ought to be ordered.

*Brady & Dean,* for appellee.

As a matter of fact, under the well-settled law in this state applicable to stock killed by a running train, the appellee here was entitled to a peremptory instruction at the conclusion of all the testimony, and had the verdict of the jury been other than what it was, this

court would have reversed the judgment rendered thereon.

Witness Fender's testimony was vague and the most that it could do was to inject enough suspicion in the case to make it proper for the court to require appellee to introduce proof. In other words, in the entire absence of any testimony to the contrary it may be conceded that appellee would be thereby charged not with negligence direct, but with the burden of the *prima-facie* statute, and be required to explain the injury of an animal.

His testimony is that he heard and saw a train running slowly, saw several mules scattering from in front of it (not running down the track for seventy-five yards in front of it, as appellant say), next morning found an injured mule south of the track leading to the rails, where there was blood. It would be a stretch to impute even *prima-facie* negligence to this testimony, but the courts have been lenient towards plaintiffs in bridging such gaps and probably would be in this case.

Then the train crew was brought in to testify and their clear, reasonable, undisputed testimony thoroughly and fully absolves the defendant and appellee from any liability of any sort. There is no necessary conflict between their testimony, the testimony of Mr. Fender and the mule tracks down the railroad.

They testified that the train was in good condition, all the testimony shows that it was running rather slowly, the fireman saw three of four mules. dash toward the track to get across in front of the engine, only one made it across going from south to north; this one was not seen by the engineer until it crossed from in front of the engine; he immediately shut off and applied the brakes, but the fireman yelled, the mules were gone and he "opened up" again.

Plaintiff's and appellant's original theory of the case was that the mule which crossed was struck by the train; this does not comport with an injured mule found on the south side of the track, with his tracks leading directly back to the rails, and with the testimony in addition to the well known propensities of the animal, that the mules frequently raced over the pasture and up the tracks.

We repeat, that it was proper for the trial judge to have granted appellee the permptory instruction askd for by it. See: *C. St. L. & N. O. R. R. Co.* v. *Packwood,* 59 Miss. 280; *N. O. & N. E. R. R. Co.* v. *Jones,* 3 So. 653; *K. C. M. & H. R. R. Co.* v. *Myers,* 7 So. 321; *Y. & M. V. R. R. Co.* v. *Smith,* 8 So. 508; *K. C. M. & B. R. R. Co.* v. *Deaton,* 9 So. 828; *L. N. O. & T. Ry. Co.* v. *Tate,* 12 So. 333; *Y. & M. V. R. R. Co.* v. *Wright,* 28 So. 806; *Southern Railway Co.* v. *Murry,* 39 So. 478; *Beasley* v. *N. O. & N. E. R. R. Co.* 45 So. 864.

Out of this list of citations we call attention particularly to the cases of *Ry Company* v *Tate,* 12 So. 333, and *Railway Company* v. *Murry,* 39 So. 478.

The second issue would be whether appellee, through its operating employees, was guilty of negligence in injurying the mule. Appellee's first instruction is entitled to the comment that the trial judge is fond of making: "It is like the old woman's cat; it can't do any good and it can't do any harm." As a matter of fact, it correctly states the engineer's duty, as we understand it, toward stock outside of municipalities and away from road crossings. The same idea in a different form is contained in the fourth instruction, and the same citations will apply.

That is to say: toward its passengers railroads are held to high degree of care." (*V. & J. R. R. Co.* v. *Patton,* 31 Miss. 156.) But both animals and human beings not on a train are required to exercise

care of their own, and a different rule obtains. It
may be admitted that animals straying from an in-
closure and wandering onto railroad tracks, or break-
ing into inclosed tracks are technically guilty of greater
trespass than animals crossing tracks which run through
an inclosed pasture.    In each instance, however, the
animals have to do a good deal of looking after them-
selves, and when discovered in danger the railroad is
held to exercise as great prudence in one case as in
the other.    However, another element enters in when
owners knowingly subject their stock to the dangers of
running trains, and the law of this state makes that
distinction clear.

In *Raiford* v. *M. C. R. R. Company,* 43 Miss. 233, it
was said:    "Raiford, by letting his horses and stock
range in proximate to the railroad, incurred the haz-
ard of their wandering on the road, and the extraor-
dinary risk to which, thereby, they might be exposed.
The fact that the animals were on the road did not
justify the agents and servants of the company in
regarding them there unlawfully and in violation of
the rights of the company, and in any measure re-
lease the company's servants from the observance of
proper care and precaution for their safety.    The com-
pany had the right to run their trains at a reasonable
speed, day and night.    We are not prepared to say
that the schedule time of running ought, in any
degree, to be controlled by the liability of stock to
wander into the road, or that the company in determin-
ing the rate of speed, should have had any special
reference to this liability.    The speed of the trains
should rather be controlled by the custom of railroads
and the exigencies of travel and freights."

In *M. & C. R. R. Company* v. *Blankerey,* 43 Miss.
218, this was re-affirmed.    The rule would not be
rendered different by the fact that the owner fenced
part of his lands—made a pasture but did not fence

against the railroad. If it is true that this is not required of him, it is also true that it is not required of the railroad, and we have circled back to the statement of the rule.

All that was required of the railroad by law was that where it entered the inclosure it should construct stock-gaps. That had been done in this case. The proof is unusually strong on the fact that appellants knew and appreciated the danger to their stock in placing them in this pasture, but they seem to have proceeded on the assumption that they might as well sell a few head to the railroad as to some buyer. They would have done well to have consulted their attorney rather than Mr. Fender.

In *Beasley* v. *Railroad Company (supra)*, 45 So. 864, Beasley put seventy head of cattle in a pasture belonging to another person, adjoining the right of way; the railroad had erected a defective fence, through which cattle got and were killed. This was held immaterial, because the fence was not required, and the further facts exonerated the railroad.

In *Y. & M. V. R. R. Co.* v. *Jones*, 71 So. 309, decided in April, 1916, this court through Judge Cook announced a rule already applied to human beings (*Railway Co.* v. *Williams*, 69 Miss. 631): "That there is no obligation on the servants of the company to keep a lookout for trespassing stock."

The first and fourth instructions, therefore, were proper. In themselves they could not and did not mislead the jury. Appellants omit to call attention to the fact that the two instructions asked for by them fully covered the railroad's duties and really overcame the very objections now urged by them to instructions one and four, without in any way conflicting with those instructions.

Justice has been done, and the verdict is manifestly right. *Perry* v. *Clark*, 5 H. 495; *Cartwright* v. *Carpen-*

*ter,* 7 H. 328; *Wilson* v. *Kohleim,* 46 Miss. 346 *Shorm* v. *Green,* 51 Miss. 103; *Y. & M. V. R. R.* v. *Martin,* 29 So. 229.

The verdict is fully supported by the testimony, and the instructions given both for the appellee and the appellant state the law sufficiently to enable the jury to apply the same to the facts. *Tush-Ho-Yo-Tubby* v. *Barr,* 45 Miss. 189; *No. & C. R. R. Co.* v. *Field,* 46 Miss. 573; *Insurance Co.* v. *Francis,* 52 Miss. 457; *Chambers* v. *Meaut,* 66 Miss. 625; *Johnson* v. *Walker,* 39 So. 49.

In conclusion, appellee charges that appellants have had more than a fair trial. That is to say, they actually did not make out a case entitling them to go to the jury, and would have had no just cause of complaint before this court had a peremptory instruction been granted to the appellee, as was justified. They did, however, go to the jury which had a fair and full opportunity of passing judgment, and did so adversely to them.

We submit that this court should affirm the judgment of the lower court.

ETHRIDGE, J., delivered the opinion of the court.

Appellants brought suit against appellee for injury to a mule, resulting in the necessity of killing the mule, making it a total loss to the plaintiffs; the suit being for two hundred and seventy-five dollars. It appeared that the appellants were a firm dealing in mules, and they turned a drove of mules, including the one injured, into the pasture of one Fender; a track of the Mississippi Central Railroad Company running through this pasture. The mule was injured at night, and Mr. Fender was introduced as a witness for the plaintiffs, and testified that he saw the train and the mules on the evening in question; that, the mules were running

down the railroad track, some being on the track and some lower than the track on the other side; that the mules ran some distance ahead of the train, and no effort was made to stop the train, or to blow the whistle or sound the alarm. It appeared that the track through the pasture was straight, and the mules could have been seen by the engineer if he had kept a lookout. It also appeared from the evidence that there were mule tracks along the railroad track for some distance, and that the mule in question was found injured in such manner as to indicate that it was struck by the train. The engineer and fireman testified for the appellee, and said that there were no mules upon the track; the engineer saying that he was on the lookout, that his train was equipped with an electric headlight by which he could see down the track from a quarter to a half mile, and that there were no mules on the track. He said that the fireman called to him that they were about to run into some stock, and that he started to slacken his speed, when the mule turned from the track, and he again turned the steam to his engine. The fireman testified that he saw a mule approach the track as though he was going to the track, but that the mule turned and did not go upon the track. There was direct conflict between the testimony of plaintiffs and that of defendant as to whether the mule was upon the track. In this state of the testimony the court granted to the defendant the following instructions:

"The court insturcts the jury, for the defendant, that defendant's engineer was not required by law to keep a lookout for stock at the place where the mule is alleged to have been struck, and the engineer was required only to exercise reasonable care and diligence to prevent striking the mule after seeing him on the track in a position of danger, and, if the engineer so acted, then your verdict will be for the defendant."

"The court instructs the jury, for the defendant, that if they believe from the evidence in this case that the plaintiffs put their mule into a pasture through which the defendant's uninclosed tracks passed, then the defendant owed them no duty other than to use reasonable care and caution not to injure plaintiffs' mule, and if they further believe from the evidence that the defendant's agents, after seeing plaintiffs' mule in a place of danger, used reasonable care and caution to prevent striking the mule, then the verdict will be for the defendant, although they may believe that the mule was struck and killed on account thereof."

We think it was reversible error to grant these instructions. The mule was injured in an inclosed pasture, and there is nothing in the record to show that the mule was a trespasser upon the track. This court has repeatedly held that live stock running at large were not trespassers in this state, and that the common law of England was not applicable to this state in so far as it held stock running at large were trespassers.

In *N. O., & G. N. Railroad* v. *Field,* 46 Miss. 573, it was held by the court that owners of cattle may permit them to run at large and to pasture upon uninclosed lands, whether of railroad companies or other owners, and do not thereby incur any responsibility as trespassers. The owner of cattle cannot be held as a trespasser for his cattle entering a close, unless they have broken a fence deemed in law sufficient to exclude them. It was likewise held that the railroad company was not bound to fence a track, but that they would be considered as proprietors of property using it for their private gain, but not to be permitted to so use it as to harm or injure others unnecessarily, if to be avoided. The doctrine of reasonable prudence in the operation of its train and the selection of its employees was laid down as the test of the duty on the part of the railroad company. See, also, *Newman* v. *V. & M.*

*Railroad,* 64 Miss. 115, 8 So. 172; *Scott* v. *Railroad,* 72 Miss. 37, 16 So. 205; *Dickerson* v. *Railroad,* 110 Miss. 898, 71 So. 312; *Railroad* v. *Patton,* 31 Miss. 156, 66 Am. Dec. 552; *Railroad* v. *Miller,* 40 Miss. 45; *Railroad* v. *McNeil,* 61 Miss. 434; *Cantrell* v. *Railroad,* 69 Miss. 435, 10 So. 580; *Railroad* v. *Morrison,* 107 Miss. 300, 65 So. 275; *Railroad* v. *Frazier,* 104 Miss. 372, 61 So.547; *Howard* v. *Railroad,* 247, 7 So. 216, 19 Am. St. Rep. 302.

In *Howard* v. *L. N., O. & T. Railway,* 67 Miss. 147, 7 So. 216, 19 Am. Rep. 302, this court recognized the duty of a railroad company to keep a lookout for cattle, but held that this duty was secondary to the duty of the engineer and fireman to properly operate the engine. The court said:

"The engineer and fireman were both engaged at their duties on the engine, and neither saw the animal on the track. While a lookout should be kept when running, it is not want of proper care for the servants of the company to give needed attention to their primary duty, which is the operation of the engine; and the the fact that, for a long time, neither the engineer nor fireman was looking out for animals on the track, did not make the company liable for the death of the animal killed. Upon the undisputed facts, the judgment of the law is that the loss of the mare should fall on her owner rather than upon the railroad company, and, as there was nothing to be found by a jury, the court rightly instructed for the defendant."

In a case note to *Harris* v. *M., K. & T. Railway,* 24 L. R. A. (N. S.) 858, it is said: "By the great weight of authority it is held to be the duty of those in charge of locomotives to keep a lookout for live stock on or near the track in order that they may prevent injury thereto; the care required in doing so being a reasonable ordinary care."

In the case before us the engineer was not engaged in other duties, and it was error to give the instruction above referred to. A different case would be presented in the case of cattle at large in a stock law district, and a different rule would apply. The mule injured in this case was not a trespasser upon the tracks within the legal meaning of that term.

The court also gave, for the defendant, the following instruction:

''The court instructs the jury, for the defendant, that although they may believe from the evidence that the defendant was negligent, still if they further believe from the evidence that the acts of the plaintiffs' mule in running in front of the defendant's train contributed to the injury to plaintiffs' mule, then they may believe the plaintiffs are entitled to recover, if any, in proportion to the injury caused by all of the mules running before the defendant's locomotive.

Inasmuch as the verdict was for the defendant, the giving of this instruction would not be reversible error; but inasmuch as the cause must be sent back for a new trial, this instruction should not be given. The comparative negligence statute has no application to injury of personal property.

*Reversed and remanded.*